The father, B.D., appeals from a Probate and Family Court judgment, entered after remand,[2] granting the mother, S.P., sole legal and physical custody of the couple's two minor children, with up to six hours per week of supervised visitation for the father, with expenses for the visitation to be paid by the father.[3] On remand, the same judge issued amended findings of fact and rationale, and judgment entered nunc pro tunc to the date of the prior judgment. In this appeal, the father submits that the judge abused her discretion by granting the mother sole legal and physical custody, arguing that (1) there was insufficient evidence to support the judge's finding that the father committed abusive conduct; and (2) the judge failed to credit both the father's efforts to improve his parenting, and his past success in coparenting with the mother. We affirm.
Standard of review. We review a judge's custody and visitation determinations for "an abuse of discretion in how the judge accounted for the child's best interests." Schechter v. Schechter, 88 Mass. App. Ct. 239, 245 (2015). There is an abuse of discretion where "the judge made a clear error of judgment in weighing the factors relevant to the decision" (quotation and citation omitted). Id. A judge making custody and visitation determinations is "afforded considerable freedom to identify pertinent factors in assessing the welfare of the child and weigh them as [the judge] sees fit." Smith v. McDonald, 458 Mass. 540, 547 (2010). Consequently, a judge's findings regarding "which parent will promote a child's best interests ... must stand unless they are plainly wrong" (quotations and citation omitted). Hunter v. Rose, 463 Mass. 488, 494 (2012).
Discussion. Parents have fundamental, constitutionally protected interests in their relationships with their children. See Schechter, supra at 247. For a judge making a child custody determination, however, "the touchstone inquiry [is] ... what is best for the child" (quotation and citation omitted). Hunter, supra. As part of that inquiry, the judge must consider "the particular needs and circumstances of the child in question," including "whether one parent's home is more stable" and "whether one parent seeks to undermine the relationship a child has with the other parent." Id. Although a judge should consider the parents' desires, "the happiness and the welfare of the child should be the controlling consideration" (quotation and citation omitted). Smith, supra at 544.
Abusive conduct. General Laws c. 209C, § 10 (e ), inserted by St. 1998, c. 179, § 6, requires the judge to "consider evidence of past or present abuse toward a parent or child as a factor contrary to the best interest of the child" when issuing a custody order. If the judge finds, "by a preponderance of the evidence, that a pattern or serious incident of abuse has occurred," she must then employ "a rebuttable presumption that it is not in the best interests of the child to be placed in sole custody, shared legal custody, or shared physical custody with the abusive parent." G. L. c. 209C, § 10 (e ). Moreover, if the judge issues a custody order after finding a pattern or serious incident of abuse, she must "within 90 days enter written findings of fact as to the effects of the abuse on the child, which findings demonstrate that such order is in the furtherance of the child's best interests and provides for the safety and well-being of the child." Id. "The requirements of the statute apply even in cases where the judge does not award custody to the abusive partner." Maalouf v. Saliba, 54 Mass. App. Ct. 547, 550 (2002) (construing G. L. c. 208, § 31A, and noting that G. L. c. 209C, § 10, contains identical language).
The father first argues that the record does not support the judge's findings regarding the father's abusive conduct. We disagree. The record here amply supports the judge's finding of a "serious incident of abuse." G. L. c. 209C, § 10 (e ). Both the father and the mother's testimony substantiated the judge's finding that on March 30, 2014, the father picked up the parties' one year old daughter, who was crying, and physically blocked her from turning her head to look at the mother.[4] The judge found, based on the father's testimony, that the father did so because he felt that he "wasn't getting enough space with [his] daughter," and wanted her to see that "it was ok" for the father to "deal with" her. Additionally, the judge found, based on both parties' testimony, that the father "smacked [the daughter] under the chin so hard that her head snapped backward." The judge found that the father then "put [his daughter] on the floor and pinned her feet under his legs and her hands under his feet." This finding was corroborated by both parents' testimony. The judge credited the mother's testimony that the father told the mother that "babies are like horses, they need to be broken." In addition, the judge implicitly credited the mother's testimony when the judge found that the father put his "legs over [his daughter's] chest making it difficult for her to breath[e]," but stopped and "threw [her] down on the bed," after the mother began filming him with her cell phone. Both the father's testimony -- and a certified copy of a conviction introduced at trial -- reinforced the judge's finding that, based on this incident, the father pleaded guilty to assault and battery of the child.[5]
Given these facts, the judge did not err in concluding that the father's actions on March 30, 2014, constituted "a serious incident of abuse" as defined by G. L. c. 209C, § 10 (e ), because the judge found that the father "attempt[ed] to cause serious bodily injury" to his daughter "by striking her so hard in the chin that her head snapped backward and by pinning her on the floor under his legs such that it was difficult for her to breath[e]." This finding created "a rebuttable presumption" that it was not in the daughter's best interest "to be placed in sole custody, shared legal custody, or shared physical custody with" the father. G. L. c. 209C, § 10 (e ). As discussed infra, the father did little to rebut this presumption.
Parenting abilities. The father contends that when evaluating the children's best interests, the judge unfairly disregarded the father's evidence of his efforts to improve his parenting skills. On the contrary, the judge explicitly found that the father had completed a batterer's program, a nurturing father's group program, participated in counselling, and took steps "to improve and enrich his parenting skills." Nevertheless, the judge weighed the father's progress against evidence of the father's inability to prioritize his children's needs. Specifically, the judge found that when attempting to explain his abusive actions of March 30, 2014, "[a]t no point ... did father discuss [his daughter's needs], he only discussed his needs." The judge found that the father "admitted that he put both of his legs over [his daughter's] body and that he held her hands down." The judge found that the father sought to justify this act by saying: "I wanted to focus on the fact that I wanted to bond with her." The judge found that "[a]t no point in his recitation of the events did father discuss [his daughter's] ability to regulate her conduct." The judge found that the father did not take responsibility for his actions on March 30, 2014, and that the "father does not believe his behavior was abusive." The judge concluded, based on testimony from both the father and the facilitator for the nurturing father's group, that the "father blamed the mother for his arrest" for the March 30, 2014 incident.[6] ,[7]
On the issue of visitation, the judge concluded that it would not be in the children's best interest to have unsupervised parenting time with the father because both children were "too young to effectively communicate their needs or feelings." The judge endeavored to balance the father's desire for visitation and the children's welfare by ordering supervised visitation, reasoning that supervised visitation would both "ensure[ ] the safety of the children and provide[ ] the best opportunity for [the] father and children to develop a strong bond." These findings and conclusions were well within her discretion. See Schechter, 88 Mass. App. Ct. at 247-248 (judge may restrict visitation to promote child's best interest). See generally Smith, 458 Mass. at 544.
Conversely, the judge made several findings about the mother's appropriateness as the children's caregiver. The judge found, based on testimony from the son's early intervention counsellor and a Department of Children and Families (department) case manager that the mother was meeting the children's needs; keeping a clean, appropriate home; complying with her department service plan; undergoing substance abuse treatment; meeting with her department case manager on a monthly basis; and engaging her son in early intervention services. In addition, the judge found that neither the case manager nor the early intervention counsellor had concerns with the mother's parenting abilities.
Finally, the father argues that the judge erred in awarding the mother sole legal and physical custody of the children because the father and mother had a past history of successful coparenting. We find the father's contention unavailing. Judges may shift custodial arrangements in order to effectively promote the child's interests. See Schechter, 88 Mass. App. Ct. at 247-248. See also Smith, 458 Mass. at 545-546. Notably, a judge may "order sole legal and physical custody with one parent" and "impose conditions and restrictions on and to suspend any visitation by the other parent" if doing so is in the child's best interests. Schechter, supra. "Joint custody is inappropriate for parents whose relationship to date has been dysfunctional, virtually nonexistent, and one of continuous conflict," and where the parents have not "demonstrated an ability to cooperate in raising the child." (Quotation and citation omitted.) Smith, supra at 545, 553. Here, the record strongly supported the judge's finding that the parties could not successfully share legal or physical custody of the children. Significantly, the judge found that the parties had been unable to coparent between 2011 and 2014, due to tension caused by various life events and diverging views of the children's needs.[8] See id. at 553. The judge explicitly found that the "[f]ather has exhibited an inability to respect the role of his children's mothers in their lives," and that the parties did not "have the ability to respectfully communicate with one another or an ability to cooperate and agree on child related issues such that they can share legal custody of the children."
Given the contentious nature of the parties' relationship, the father's abusive conduct towards the mother and the children, and the parties' past inability to coparent, the judge did not err in declining to award the parties joint legal or physical custody, or by limiting the father's visitation. See Schechter, supra at 247-248. See also Smith, supra. The judge reasonably concluded that, at present, the mother was better able to provide for the children's "particular needs," than the father, and that it would be in the children's best interest to be in the mother's sole care. Hunter, 463 Mass. at 494.[9]
Conclusion. For the above reasons, we conclude the judge did not abuse her discretion in awarding sole legal and physical custody to the mother, and by restricting the father's visitation.
Judgment entered December 20, 2017, affirmed.

In the prior appeal, a panel of this court vacated the judgment and remanded the case for further proceedings because it concluded that the judge had not made sufficient findings to satisfy the requirements of G. L. c. 209C, § 10 (e ). See S.P. v. B.D., 92 Mass. App. Ct. 1115 (2017).

The mother, S.P., did not file a brief in this appeal.

The parties' older child, a son, was also present, and the mother testified that he was "crying and hiding in a fetal position" during this incident.

For this conviction, the father received a sentence of two and one-half years in the house of correction, with six months to be served, and the balance suspended for two years.

Although the father claims on appeal that he does not blame the mother for his arrest, his brief also argues that the "Mother's Unruly Behavior ... Likely Influenced The Father's [Later] Questionable Behavior."

On this point, the judge found, based on the father's concessions on cross-examination, that the father filed several civil lawsuits against the mother, the mother's counsel, the Department of Children and Families, the police, and an assistant district attorney for their roles in the father's criminal case arising from the March 30, 2014 incident.

The judge found that the father had a history of abusive conduct towards both S.P., the mother in this case, and T.L., the mother of the father's oldest child. The judge credited S.P.'s testimony that the father verbally abused her by calling her such terms as "stupid bitch" and "cunt." The judge found that S.P. had a permanent restraining order against the father, and that T.L. had obtained a restraining order against the father in the past. The judge also found that T.L. conceded that the father was arrested and charged with assault and battery, making threats to kill, and attempted murder in relation to an incident in which she was the victim. In that case, the father was convicted of assault and battery of T.L. for which he received a sentence of two and one-half years in the house of correction.

The father also argues that he should not have been ordered to bear the cost of supervised visitation because of his limited financial resources. There was no error. Per G. L. c. 208, § 31A (e ), a judge ordering visitation with an abusive parent "shall provide for the safety and well-being of the child," and "may consider ... ordering the abusive parent to pay the costs of supervised visitation." Here, given the judge's detailed findings on the father's abusive conduct towards his daughter, the judge appropriately ordered supervised visitation with costs paid by the father in order to "ensure[ ] the safety of the children and provide[ ] the best opportunity for [the] father and [the] children to develop a strong bond." On the father's claim of financial hardship, our decision here to affirm the judge's order imposing on the father the cost of supervised visitation does not preclude him from seeking a modification of this order in the event of a material change in his financial or other relevant circumstances.