NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-1168

H.B.[1]

vs.

D.B.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

At the conclusion of a four-day trial, a judge of the Probate and Family Court issued a final judgment of divorce granting primary physical and sole legal custody of the parties' minor daughter to the father, D.B. The mother, H.B., appeals, arguing that the judge erred by (1) failing to adequately consider evidence of domestic violence in the household and alleged sexual abuse of the daughter by the father; (2) declining to apply a rebuttable presumption against granting custody to the father under G. L. c. 208, § 31A; (3) exhibiting bias in favor of the father; (4) denying the mother's motion to appoint new counsel for the children; and (5) allowing a nurse who examined the daughter to testify as an expert. We affirm.

---

[1] We use the initials for the name appearing in the complaint for divorce.

Background.  The following facts are drawn from the findings of the Probate and Family Court judge.  The parties were married in 1999.  Over the course of the marriage, the parties had three sons and adopted a daughter.  In 2012, after the mother had a stroke, the parties' relationship began to deteriorate.  In 2014, the parties had a dispute over a $100 gift that escalated into a physical altercation in which the father grabbed the mother.  On another occasion, the mother pointed a finger in the father's face, and the father grabbed or twisted the mother's hand.  Thereafter, the mother sought and received an abuse prevention order, and the father did not see the children "for a span of months."

 At around the same time, the mother began to suspect that the father was sexually abusing their daughter.  In September 2014, the mother discovered that the daughter, who was seven years old at the time, had been looking up pornography on her tablet.  The mother then took the daughter to two separate therapists, one of whom was treating the mother.  The daughter disclosed that she had been sexually abused by the father, which led to the filing of various G. L. c. 119, § 51A reports with the Department of Children and Families (department).  The department investigated and ultimately concluded that the allegations were unsupported.

During the course of the investigation, the department became concerned that the mother was bringing the daughter to multiple therapists, continuing to question her regarding alleged incidents of abuse, and continuing to subject her to medical examinations, and as a result, the department filed a care and protection petition. The record is not entirely clear as to what transpired thereafter, however, there is no dispute that the daughter has resided primarily with the father since 2016.

As noted, the parties subsequently divorced and a trial on the issues of custody and child support was held in the Probate and Family Court. The judge found, based on "the totality of the circumstances," that the aforementioned incidents of domestic violence between the parties did not constitute a serious incident or pattern of abuse under G. L. c. 208, § 31A. The judge generally credited the testimony of the father and not the mother where their testimony conflicted. The judge found that the father had developed a stable home environment for the daughter and noted that the mother often made parenting decisions that were not always in the daughter's best interests. For example, the judge determined that the mother failed to respect the daughter's privacy and did not always understand her social and emotional needs.

Discussion.  We review custody determinations for an abuse of discretion.  Schechter v. Schechter, 88 Mass. App. Ct. 239, 245 (2015).  "In custody matters, the touchstone inquiry [is] . . . what is 'best for the child,'" and "[t]he determination of which parent will promote a child's best interests rests within the discretion of the judge . . . [whose] findings . . . 'must stand unless they are plainly wrong.'"  Hunter v. Rose, 463 Mass. 488, 494 (2012), quoting Custody of Kali, 439 Mass. 834, 840, 845 (2003).  While there is no "definitive list of criteria" for the judge to consider when assessing the children's best interests, "[certain] constants are revealed in our [cases]," including "the need for stability," "the decision-making capabilities of each parent to address the child's needs, and the living arrangements and lifestyles of each parent and how such circumstances may affect the child" (citation omitted).  El Chaar v. Chehab, 78 Mass. App. Ct. 501, 506 (2010).  See G. L. c. 208, § 31.  "The judge is afforded considerable freedom to identify pertinent factors in assessing the welfare of the child and weigh them as [he] sees fit."  Smith v. McDonald, 458 Mass. 540, 547 (2010).

The judge must, however, "consider evidence of past or present abuse toward a parent or child as a factor contrary to the best interest of the child."  G. L. c. 208, § 31A.  A judge's finding that a pattern or serious incident of abuse has

4

occurred creates a rebuttable presumption that it is not in the best interests of the child to be placed in sole custody, shared legal custody, or shared physical custody with the abusive parent.  Id.  See Custody of Vaughn, 422 Mass. 590, 599-600 (1996).  A serious incident of abuse is

> "the occurrence of one or more of the following acts between a parent and the other parent or between a parent and child:  (a) attempting to cause or causing serious bodily injury; (b) placing another in reasonable fear of imminent serious bodily injury; or (c) causing another to engage involuntarily in sexual relations by force, threat or duress."  G. L. c. 208, § 31A.

1.  Evidence considered by the judge.  The mother first argues that many of the judge's findings were clearly erroneous primarily because, she asserts, he did not consider evidence that favored her position.  Our review of the record does not support this assertion.  To begin with, the findings challenged by the mother were based on the judge's assessment of the credibility of the witnesses who testified at trial -- including both parties and several doctors and mental health professionals.  As there is nothing in the record that demonstrates those credibility determinations were "plainly wrong," we decline to disturb them.  Zaleski v. Zaleski, 469 Mass. 230, 237 (2014), quoting Felton v. Felton, 383 Mass. 232, 239 (1981).  Indeed, "[i]n this situation, '[t]he opportunity which the judge had to observe and appraise both parents is particularly important.'"  Bak v. Bak, 24 Mass. App. Ct. 608,

5

616 (1987), quoting Stevens v. Stevens, 337 Mass. 625, 627 (1958).

2. Rebuttable presumption. The mother also argues that the judge erred in declining to apply the rebuttable presumption under G. L. c. 208, § 31A that granting custody to the father was not in the best interests of the daughter. As stated above, this rebuttable presumption must be applied where a judge finds that a pattern or serious incident of abuse has occurred. See G. L. c. 208, § 31A; Custody of Vaughn, 422 Mass. at 599-600.

In this case, the judge explicitly considered the application of the rebuttable presumption, finding that "the credible evidence before the [c]ourt does not demonstrate that a serious incident or pattern of abuse occurred." The mother's argument essentially amounts to a challenge to this finding. Again, where the judge's finding is based largely on credibility determinations and there is sufficient evidence to support his conclusion, we cannot say that the judge abused his discretion.

3. Judicial bias. The mother also argues that the judge engaged in "overzealous judicial questioning" and gave the impression that he was advocating for the father. In support, the mother points to two comments by the judge. First, in response to an objection concerning the admissibility of evidence regarding the criminal history of one of the parties' sons, the judge stated, "[e]ven if I allowed it in, it would go

to the issue of weight, and it would be very insignificant.  If

the police interviewed him and there were no charges and no

issues -- I mean, you know, whatever happened to the concept of

innocent until proven guilty."  Later, during the same exchange,

the judge stated:

> "You know, let's look at this from the context of what the
> issues are.  The issues are current, best interests of the
> children.  Now granted historically I can evaluate and
> assess what has gone on.  Let all of us who have not had to
> deal with adversities related to our children, you know,
> and manage the behavior and conduct of young adults during
> their adolescent, late teen and early twenty years -- you
> know, this happens."

We are not persuaded that either comment was "overzealous"

or that the remarks indicate that the judge was advocating for

the father.  Both comments addressed the relevance of evidence

pertaining to one of the sons.  The judge simply explained that

little weight would be given to this evidence, because the issue

at trial was custody of the parties' daughter, not of their

older sons, and because the son was investigated and no charge

was brought.[2]  There was no error.

   4.  Denial of the mother's motion to appoint new counsel

for the children.[3]  Prior to trial, the mother filed a motion to

---

[2] To the extent that the mother challenges the judge's
evidentiary rulings on this point, we discern no abuse of
discretion.
[3] The motion concerns all the children of the parties, however,
as noted, this appeal only relates to the judge's determination
of custody as to the parties' daughter.

appoint new counsel for the children.  She alleged in her motion that counsel for the parties' minor children was biased against her and had a conflict of interest because he "helped found, and is still affiliated with The Kid's Place, which has dismissed allegations of abuse by the mother."[4]  There is no ruling evident on the docket; however, the motion was implicitly denied, as new counsel was not appointed.  According to the trial transcripts in the record, the mother did not press for a ruling before trial commenced.  We review the denial of the motion for an abuse of discretion.  See Steinert v. Steinert, 73 Mass. App. Ct. 287, 288 (2008) (judge's decision on motion to disqualify counsel reviewed for abuse of discretion).

On appeal, the mother has narrowed her claim slightly and asserts that the attorney had "an interest in promoting the legitimacy of his facility," and that this interest created a potential conflict of interest.  While it is true, as the mother argues, that the attorney did not ask any questions of the witnesses employed by The Kid's Place, the mother has not articulated any basis for determining that such questioning by

---

[4] The mother submitted an affidavit in support of the motion in which she alleged that the attorney was involved with establishing The Kid's Place and still supports it.  There is nothing in the record to support the mother's allegations nor does she explain the basis for her assertions.  In any event, even if we were to assume that the mother is correct, the record is not sufficiently developed to establish a conflict of interest such that the attorney's disqualification was required.

8

the attorney would have uncovered additional evidence of the witnesses' biases.  The witnesses were cross-examined at length by the mother, and she does not point to any additional favorable testimony that would have been gleaned from further cross-examination.  Accordingly, we cannot say that the judge abused his discretion.

5.  Expert testimony.  At trial, the mother objected to the testimony of Anne Hutchinson, a nurse practitioner, on the grounds that she was providing expert testimony without having previously been disclosed as an expert.  The judge overruled the objection but gave the mother the option of suspending the testimony in order to question her about her qualifications.  The mother declined to do so, and now challenges the judge's decision to allow Hutchinson to testify as an expert.

The father does not contest the fact that he failed to disclose Hutchinson as an expert witness prior to trial.  Although the mother is correct that the father should have disclosed Hutchinson as an expert, we cannot say that the judge committed an abuse of discretion in allowing Hutchinson's limited expert testimony.  The mother was on notice that Hutchinson would be called as a witness years before trial and that she had expertise in her field of work.  See Beaupre v. Cliff Smith & Assocs., 50 Mass. App. Ct. 480, 485-486 (2000) (no abuse of discretion where doctor allowed to testify as expert

9

mid-trial; other party knew doctor would be key witness and had opportunity to obtain substance of testimony prior to trial). Furthermore, Hutchinson's testimony was primarily based on her own observations, supplemented only by her expertise when necessary to identify the differences and similarities between the daughter's anatomy and that of other children.  Therefore, we conclude that the judge did not abuse his discretion in allowing Hutchinson to testify about her examination of the daughter.

<u>Final judgment of divorce dated September 15, 2021, affirmed</u>.

By the Court (Vuono, Henry & Grant, JJ.[5]),

*Joseph F. Stanton*

Clerk

Entered:  April 24, 2023.

---

[5] The panelists are listed in order of seniority.