## Laurie Wakefield *vs.* James Hegarty.

No. 06-P-1123.

Essex. September 18, 2006. - November 27, 2006.

Present: Greenberg, Green, & Graham, JJ.

*Parent and Child,* Custody. *Minor,* Custody. *Probate Court,* Findings by judge.

In a proceeding in Probate and Family Court on a petition by the mother under G. L. c. 208, § 30, seeking to relocate herself and her minor child to St. Croix, the record fully supported the judge's findings of fact [774-775]; further, the judge did not abuse her discretion in applying the "real advantage" test in considering the mother's proposed removal of the child [775-777], and did not err in finding that the mother had established good, sincere reasons for relocation [777], or in finding that relocation would be in the best interests of the child [777-778].

A probate judge did not abuse her discretion in denying a father joint legal custody of his child, where the judge based her decision on the evidentiary record as a whole, and not solely on the mother's testimony surrounding the father's mental health. [778]

Complaint to establish paternity filed in the Essex Division of the Probate and Family Court Department on March 6, 2003.

The case was heard by *Mary McCauley Manzi,* J.

*Philip J. Byers* for the father.

*Carol Weinstein Boileau* for the mother.

Graham, J. James Hegarty (father) appeals from a Probate and Family Court decision granting authority to Laurie Wakefield (mother) to relocate herself and the parties' minor child to St. Croix in the United States Virgin Islands under G. L. c. 208, § 30, and granting her sole physical and legal custody of the child. The father contends that the findings of fact made by the judge are clearly erroneous and should be set aside; that the judge erred as a matter of law and abused her discretion in determining that there was a real advantage to the mother in

moving to St. Croix; that the judge abused her discretion in determining that the mother's move to St. Croix was in the best interest of the child; and that the judge abused her discretion in awarding the mother sole legal custody of the child.

1. *Background.* We summarize the findings of fact made by the judge following a contested trial as follows. The mother and father met in 1989 and lived together until August, 2002, when they separated. The parties never married but had a child on March 23, 2000. In September, 2001, following a maternity leave of absence, the mother returned to full-time employment, obtaining the position that she held at the time of trial. Initially, the child attended daycare at the home of her paternal aunt for six to seven hours per day. The father has been very active in caring for the child since her birth and was helpful in caring for her during this period. However, since August, 2002, the child has lived solely with the mother, who has been the child's primary caretaker.

On March 6, 2003, the mother filed a complaint in the Probate and Family Court on the child's behalf seeking to establish paternity against the father. She further sought an order granting her custody of and suitable child support for the child. On September 24, 2003, the parties entered into a stipulation that was incorporated into a temporary order on that date. The temporary order granted the mother sole physical custody of the child, but granted shared legal custody to both parties. The order also granted the father visitation on Tuesdays after preschool until 7:00 P.M.; on Thursdays after preschool until 9:00 A.M. on Fridays; on Saturdays at 4:00 P.M. until 4:00 P.M. on Sundays; and at "any such other times as the parties may agree."[1]

Around November of 2004, the mother informed the father that she wanted to relocate with the child to St. Croix in the Virgin Islands, where she had grown up and where her mother, father, and sister still reside. After investigation, a court-appointed guardian ad litem recommended that the mother be allowed to relocate to St. Croix with the child.

[1]The parties have since agreed to their own visitation schedule. The father currently has visitation with the child every other weekend and every Wednesday afternoon through Thursday night. The father also at times has taken care of the child during some of the mother's business trips.

In St. Croix, the mother will continue working for her current employer in a new position as a "contract worker." In that position, she would work at home and be more available to the child. Moreover, she would be working at an increased salary. In addition, the mother would enjoy greater family support. The maternal grandfather is a Lutheran minister who is set to retire in November, 2006. The maternal grandmother, who is retired, has a bachelor of science degree in early childhood development and a master's degree in library sciences. Both are very active in the St. Croix community. The maternal aunt, a marine biologist, is married and has a daughter who was five years old at the time of trial.

The mother has proposed a visitation schedule for the father that includes extended visits, both in St. Croix and in Massachusetts, during the Christmas and spring vacations and Columbus Day weekend. In addition, the father will be allowed to visit the child at other times in St. Croix so long as he gives the mother at least thirty days' notice. The mother has agreed to bring the child on any business trips to Massachusetts that do not conflict with school, and the child would never travel alone. The father will have communication with the child via telephone, electronic mail, and Internet-accessible cameras.

2. *Judge's findings of fact.* A trial judge's findings of fact will not be set aside unless clearly erroneous. *Barboza* v. *McLeod,* 447 Mass. 468, 469 (2006). Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Barboza, supra,* quoting from *Marlow* v. *New Bedford,* 369 Mass. 501, 508 (1976).

In addition, a reviewing court will give due regard to the judge's assessment and determination of the credibility of the witnesses in making such findings. *Custody of Eleanor,* 414 Mass. 795, 800 (1993). A judge's assessment of the quality of the testimony is entitled to considerable weight because he or she is in the best position to judge the weight and credibility of the evidence. *Edinburg* v. *Edinburg,* 22 Mass. App. Ct. 199, 203 (1986).

We have reviewed the detailed findings of the judge and conclude that they are fully supported in the record. While the father has stated his disagreement with the judge's assessment of the credibility of the witnesses and the weight she gave to the evidence, he has failed to demonstrate that the findings of fact are clearly erroneous and should be set aside.

3. *Application of the "real advantage" test.* Initially, we note that, although the parties were never married, the child is entitled to the same rights and protections of the law as other children. G. L. c. 209C, § 1.[2] Here, the judge properly applied the correct legal standard in determining that the mother could remove the child to St. Croix. The Massachusetts removal statute, G. L. c. 208, § 30, provides that "[a] minor child of divorced parents who is a native of . . . this commonwealth . . . shall not, if at suitable age to signify his consent, be removed out of this commonwealth without such consent, or, if under that age, without the consent of both parents, unless the court upon cause shown otherwise orders." The purpose of the statute is to preserve the rights of the noncustodial parent and the child to maintain and develop their familial relationships, while balancing those rights with the right of the custodial parent to seek a better life for himself or herself in another State or country. *Yannas* v. *Frondistou-Yannas*, 395 Mass. 704, 712 (1985).

In *Yannas, supra* at 711, the Supreme Judicial Court established the calculus for solving this problem by setting forth a two-part inquiry when considering a custodial parent's proposed removal of a minor child. "In this process, the first consideration is whether there is a good reason for the move, a 'real advantage.' " *Ibid.* This requires that the custodial parent establish "a good, sincere reason for wanting to remove to another jurisdiction." *Ibid.* Here, the judge must consider both "the soundness of the reason for moving, and the presence or absence of a motive to deprive the noncustodial parent of reasonable visitation." *Ibid. Rosenthal* v. *Maney*, 51 Mass. App. Ct. 257, 267 (2001).

---

[2] We note that the parents in this situation were in a live-in relationship when the child was born, and they parented the child together before and after their breakup.

The second inquiry that shall be made by the judge is whether removal from the jurisdiction is in the best interests of the child. "An evaluation of the best interests of the child requires attention to whether the quality of the child's life may be improved by the change (including any improvement flowing from an improvement in the quality of the custodial parent's life), the possible adverse effect of the elimination or curtailment of the child's association with the noncustodial parent, and the extent to which moving or not moving will affect the emotional, physical, or developmental needs of the child." *Yannas, supra.*

"If the custodial parent establishes a good, sincere reason for wanting to remove to another jurisdiction, none of the relevant factors becomes controlling in deciding the best interests of the child, but rather they must be considered collectively." *Yannas, supra* at 711-712. *Rosenthal,* 51 Mass. App. Ct. at 267-268. At this second stage "[e]very person, parent and child, has an interest to be considered. The judicial safeguard of those interests lies in careful and clear fact-finding . . . ." *Yannas, supra* at 712.

The father claims that the judge abused her discretion in applying the "real advantage" test because his daily contact and close relationship with his daughter constitute a "de facto" joint physical custody arrangement with the mother. He argues that the applicable analysis is the one set out in *Mason* v. *Coleman,* 447 Mass. 177, 184 (2006), in which the court held that where physical custody is shared, the importance of one parent's advantages in relocating outside of the jurisdiction is diminished. The advantage to the moving parent becomes merely a relevant factor in the over-all inquiry of what is in the child's best interests. *Id.* at 185-186.

Unlike in *Mason, supra* at 178-179, where the judge found that each parent took a significant part in the caretaking of the children and entered into an agreement for joint physical and legal custody, the parties here stipulated in a temporary order that mother would have sole physical custody of the child. The judge in her findings, which were clearly supported in the record, found that the mother had always been the child's primary caretaker and that the child has resided solely with the mother.

Thus the judge did not abuse her discretion in applying the "real advantage" test.

After close examination of the mother's interests, the judge concluded that the mother demonstrated a real advantage for relocation. By moving to St. Croix, the mother will benefit both financially and emotionally. Her income will increase, and she will be able to work from home and spend more time with her daughter. Her cost of living will be reduced because initially she will be residing in her family's housing. She will be able to afford to send the child to a private school. The child's maternal grandparents will be available to provide support for both the mother and the child.

In addition to determining that there was a real advantage to the mother in relocating to St. Croix, the judge made findings, supported in the record, that the mother's motivation in relocating was not to deprive the father of reasonable visitation. The judge found further that the mother spent considerable effort in fostering a continued substantial relationship between the father and the child and that she would continue to do so. There was no error in the judge's finding that the mother had established good, sincere reasons for relocation. See *Yannas,* 395 Mass. at 712.

4. *Examination of the child's best interests.* The judge also concluded that relocation by the mother to St. Croix would be in the best interests of the child. She based her conclusion in part on her findings that the move would result in an improvement in the life of the mother that would inure to the child's benefit; that the child would have greater access to the mother, her primary caretaker, and also to an extended group of family members; that the child would have greater educational opportunities in St. Croix; and, contrary to the claim of the father, that all of this would positively affect the emotional, physical, and developmental needs of the child.

The judge, in arriving at her decision, took into consideration the preservation of the child's relationship with the father. That perspective implicates the best interests of the child as manifested through visitation with the father. In that regard, the judge recognized that visitation by the father will change to his disadvantage, but concluded that the alternative visitation ar-

rangements were reasonable. She found that the mother was acting in good faith and not to frustrate the father's visitation rights. The judge further found that the mother would keep the father fully informed and discuss with him all issues regarding the child and would continue to foster the strong relationship between the child and her father. Finally, in anticipation of the father's costs of travel to and from St. Croix, the judge granted a reduction in the child support payment of the father.

On the record before us, it appears that there was no error made by the judge in her collective balancing of interests and her determination that removal was appropriate. See *Williams* v. *Pitney,* 409 Mass. 449, 456 (1991); *Vertrees* v. *Vertrees,* 24 Mass. App. Ct. 918, 920 (1987); *Rosenthal,* 51 Mass. App. Ct. at 271. Contrast *Dickenson* v. *Cogswell,* 66 Mass. App. Ct. 442, 449-453 (2006) (affirming a judgment denying removal where the move would make the mother and child financially less secure, take the mother away from her support network of friends and family, and force the child to take frequent overnight flights to visit his father).

5. *Legal custody of the child.* The father's final argument is that the judge granted the mother sole legal custody of the child based only on the mother's testimony regarding issues surrounding the father's mental health. A careful review of the judge's findings, however, reveals that the judge based her decision in regards to legal custody of the child on the evidentiary record as a whole. We find no abuse of discretion by the judge in denying the father joint legal custody of the child.

*Judgment affirmed.*