NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-518                                     Appeals Court


DAWN MICHELLE MURRAY  vs.  JONATHAN S. SUPER.


No. 14-P-518.

Worcester.      December 2, 2014. - March 16, 2015.

Present:  Cypher, Wolohojian, & Blake, JJ.


Divorce and Separation, Child custody, Child support,
    Modification of judgment.  Minor, Custody.  Parent and
    Child, Custody, Child support.


    Complaint for divorce filed in the Worcester Division of
the Probate and Family Court Department on January 30, 2009.

    After consolidation, complaints for modification, filed on
July 10, 2012, and October 2, 2013, were heard by Lucille A.
DiLeo, J.


    Nicholas J. Plante for the mother.
    Christine D. Anthony for the father.


    BLAKE, J.  The mother, Dawn Michelle Murray, appeals from a

judgment of the Probate and Family Court dismissing her

complaint for modification, which sought to remove the minor

children of the marriage to the State of California.  Where the

parent seeking to move has primary physical custody of the

children, the standard governing removal of the minor children from the Commonwealth requires a determination of whether there is a real advantage to the custodial parent and consideration of the best interests of the children and the interests of both parents.  See Yannas v. Frondistou-Yannas, 395 Mass. 704, 710-711 (1985) (Yannas).  Where the real advantage to the custodial parent is at odds with the best interests of the children, the children's interests are paramount.  Concluding that the judge below did not err in placing the interests of the children first, we affirm that part of the judgment denying the mother's request to remove the children to California.

The mother also appeals from that portion of the judgment reducing the child support obligation of the father, Jonathan S. Super.[1]  We vacate the portion of the judgment related to child support and remand the matter for additional findings on that issue.

Background.  We summarize the proceedings, setting forth relevant background facts as determined by the judge, supplemented by the record where necessary, and reserving other facts for our later discussion of the issues.  The parties were divorced by judgment of divorce nisi on October 24, 2011, after

---

[1] The father filed a subsequent complaint for modification seeking a reduction in his child support obligation.  The two complaints were consolidated for trial in the Probate and Family Court.

a contested trial.  The divorce judgment provided, in pertinent part, that the parties would share legal custody of their three minor children,[2] with the mother having "primary physical custody" and the father having parenting time.  When the children are not in the care of the father, they are in the mother's custody.[3]  The divorce judgment also ordered the father to pay $830 per week in child support to the mother, plus twenty-five percent of any net bonus received as additional child support.

On July 10, 2012, the mother filed a complaint for modification alleging, as a change in circumstances, that she was to be married on August 3, 2012, to a resident of Danville, California.  For this reason, the complaint sought removal of the minor children to California.[4]  Sometime thereafter, the father filed his own complaint for modification, wherein he sought to (1) reduce his child support obligation to the mother due to the financial support she receives from her new husband;

---

[2] Jonathan was born on May 3, 1997, and twins Nathan and Christian were born on May 31, 2002.

[3] The children are with the father on alternating weekends from Friday evening to Monday morning and overnight each Wednesday.  The father has additional parenting time in the summer and on some holidays.  The remaining time is spent with the mother.

[4] The judge properly considered the complaint to be one for removal pursuant to G. L. c. 208, § 30.  See Tammaro v. O'Brien, 76 Mass. App. Ct. 254, 257-259 (2010).

and (2) establish a defined holiday and vacation schedule for the parties' children. The cases were consolidated and tried together.

In her findings and rulings, the judge entered 261 detailed findings of fact as to both parents, the eldest child, Jonathan, age seventeen at the time of trial, and the younger twins, Nathan and Christian, age twelve at trial. Based on those findings, the judge determined that a move to California would be a real advantage to and in the interests of the mother. She nevertheless dismissed the mother's complaint on the grounds that the move was not in the best interests of the children or the interests of the father. She also reduced the father's child support obligation. This appeal followed.

Discussion. We review the judgment and the subsidiary findings of fact for abuse of discretion or other error of law. A trial judge's findings of fact will not be set aside unless clearly erroneous. Barboza v. McLeod, 447 Mass. 468, 469 (2006). The reviewing court will give due regard to the judge's assessment and determination of credibility of the witnesses in making such findings. Custody of Eleanor, 414 Mass. 795, 799-800 (1993). "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the decision, . . . such that the decision falls outside the range

of reasonable alternatives." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014), quoting from Picciotto v. Continental Cas. Co., 512 F.3d 9, 15 (1st Cir. 2008).

1. Removal. "The removal from the Commonwealth of children of divorced parents is governed generally by G. L. c. 208, § 30, as amended through St. 1986, c. 462, § 9, which provides that such children, if less than an age at which they are capable of granting or withholding consent themselves, may be removed by consent of both parents or, failing that, by order of the court 'upon cause shown.'" Pizzino v. Miller, 67 Mass. App. Ct. 865, 869 (2006).[5,6] "The purpose of the statute is to preserve the rights of the noncustodial parent and the child to maintain and develop their familial relationships, while

---

[5] General Laws c. 208, § 30, provides that "[a] minor child of divorced parents who is a native of or has resided five years within this commonwealth and over whose custody and maintenance a probate court has jurisdiction shall not, if of suitable age to signify his consent, be removed out of this commonwealth without such consent, or, if under that age, without the consent of both parents, unless the court upon cause shown otherwise orders."

[6] The father argues that we may affirm the judge's decision on the alternative ground that none of the children, who were of suitable age, consented to the move. The record supports the judge's conclusion that there was insufficient evidence to support a finding that the children did not consent to the move.

Although not applicable here, an analysis of "suitable age to signify his consent," G. L. c. 208, § 30, should take into account the child's age, maturity, intellect, skill, and academic ability. See Ardizoni v. Raymond, 40 Mass. App. Ct. 734, 738-739 (1996); Altomare v. Altomare, 77 Mass. App. Ct. 601, 609-610 (2010).

balancing those rights with the right of the custodial parent to seek a better life for himself or herself in another State or country."  Wakefield v. Hegarty, 67 Mass. App. Ct. 772, 775 (2006).

In determining whether cause for removal by the parent with primary physical custody has been shown under the statute, the judge must consider the custodial parent's request under the familiar two-prong "real advantage" test set forth in Yannas, 395 Mass. at 710-712, and Hale v. Hale, 12 Mass. App. Ct. 812, 818-819 (1981).  "[T]he first consideration is whether there is a good reason for the move, a 'real advantage.'"  Yannas, supra at 711.  Second, if the real advantage test is satisfied, the judge must consider whether the move is in the best interests of the children.  Ibid.  See Wakefield v. Hegarty, supra at 776; Pizzino v. Miller, supra at 870-871; Altomare v. Altomare, 77 Mass. App. Ct. 601, 604 (2010).  We address each prong in turn.

a.  Real advantage to the mother.  To satisfy the real advantage test, the custodial parent must demonstrate "the soundness of the reason for moving, and the presence or absence of a motive to deprive the noncustodial parent of reasonable visitation."  Yannas, 385 Mass. at 711.

Here, the judge found that moving to California would be a real advantage to the mother.  In reaching her decision, the

judge generally considered the mother's remarriage,[7] the emotional difficulty and sadness she experiences from being separated from her new husband, and the social and emotional benefits she would experience if she lived with her husband in California.  On these bases, and the evidence presented, the judge found that the mother's remarriage was not a sham, was not contracted for some unlawful purpose, and that she had demonstrated that the reasoning behind the requested move was sound.

The record supports the judge's findings.  The mother has extended family in California.[8]  Her new husband is unable to move from California because he shares caregiving responsibilities for his twelve year old daughter, who has significant disabilities, with his former wife.  If she were able to move, the mother's financial situation would improve due to her new husband's considerable wealth, and she would not need to work outside the home.  The judge's finding that these advantages would have a positive trickle-down effect on the children is supported by the record.  Further, there was no

---

[7] The mother married William Murray (Murray) on August 3, 2012.  This is the second time the mother and Murray were married.  Their first marriage in 1988 ended in divorce in 1990. Murray did not testify at this trial.

[8] The mother's only sibling and his family live in Danville, California, and her parents live two hours from Danville. Neither the mother nor the father has extended family in Massachusetts.

evidence that would support a finding that the proposed move was designed to deprive the father of his parenting time with the children.  In short, we discern no error or abuse of discretion in the finding of a real advantage to the mother.

b.  Best interests of the children.  In discussing the best interests standard, the court in Yannas observed that "[i]f the custodial parent establishes a good, sincere reason for wanting to remove to another jurisdiction, none of the relevant factors becomes controlling in deciding the best interests of the child, but rather they must be considered collectively."  395 Mass. at 711-712.  The relevant factors are:  (1) whether the quality of the children's lives will be improved, including any improvement that "may flow from an improvement in the quality of the custodial parent's life"; (2) any possible "adverse effect of the elimination or curtailment of the child[ren]'s association with the noncustodial parent"; (3) "the extent to which moving or not moving will affect the [children's] emotional, physical, or developmental needs"; (4) the interests of both parents; and (5) the possibility of an alternative visitation schedule for the noncustodial parent.  Dickenson v. Cogswell, 66 Mass. App. Ct. 442, 447 (2006), quoting from Yannas, supra at 711-712. Applying these factors, we agree with the judge that the proposed move was a real advantage for the mother, but not in

the best interests of the children or the interests of the father.[9]

i. Quality of the children's lives. At the time of trial, Jonathan was a junior in high school; the twins were in the sixth grade. Jonathan will turn eighteen in May, 2015, and the twins will turn thirteen also in May, 2015. In considering whether the quality of their lives would be improved by the proposed move, the judge found that their currently stable lives would suffer, "as they would [lose] the structure and support of regular weekly contact with Father, [as well as] the peer groups that they have developed at school, church and through their other activities." All three children have lived in Bolton their entire lives and have attended public school in Bolton. Jonathan plays trumpet in the advanced jazz band. The twins play instruments in both the concert band and the jazz band. Christian also plays piano and sings in the choir. The judge also found that the mother tended to present an optimistic picture of the move that lacked insight. She focused on the children's potential enjoyment of California while minimizing

---

[9] In determining the proposed move was not in the best interests of the children, the judge relied, in part, on the testimony and report of the guardian ad litem (GAL), exclusive of her recommendations. See Gilmore v. Gilmore, 369 Mass. 598, 604 (1976) (trial judge is permitted consider GAL report as evidence). The GAL interviewed the three children separately, interviewed the parents, observed the children with each parent, and interviewed collateral witnesses, including the mother's new husband and the children's teachers and medical professionals.

the difficulties that the transition would likely pose for them and their ability to maintain a strong relationship with the father.  The mother selectively informs the father of the children's activities.  By way of example, the mother's husband employs Jonathan, who works remotely from Massachusetts.  The father only learned this information at the trial.  Yet another example of this behavior is that despite the twins being invited to play on a particular basketball team, the mother unilaterally and without explanation declined the offer without consulting the father.  By contrast, the father objected to Christian playing football, explaining to the mother his concern that the four night per week time commitment would interfere with Christian's school work.  The judge also found that the mother "lacks self-awareness and is self-referential.  [She] focused on superficial advantages to the children and . . . ignored the dilemma poignantly described by all three children to the GAL, namely that the children want their parents to be happy but do not want them separated by 3,000 miles."

On appeal the mother argues that the judge erred in finding that she had failed to show how the children's lives would be improved by a move to California.  That finding has little significance, however, where both parties acknowledge that neither has any concern with respect to the California schools or the quality of education there.  Indeed, the father did not

challenge the mother's assertion that the community and school system the children would enjoy in California is equivalent to the one in Bolton, where they have lived for their entire lives.

ii. <u>The children's relationship with their father</u>. The judge found that the father has a strong bond with the children, is an active and involved parent, coaches them in their athletic activities, attends church regularly with them, and has never missed parenting time with them. She further found that except for two occasions, the father's requests for additional parenting time have been rejected by the mother. All three boys golf with the father and ski with both parents. The twins play baseball both casually with the father and on organized teams. On the whole, the children spend nearly a third of the year with the father. For these reasons, the judge found that a cross-country move would impose significant stress on the children and the father and negatively impact the frequency and quality of his parenting time with them.

iii. <u>Children's emotion, physical, and developmental needs</u>. Jonathan, Nathan, and Christian are well-adjusted, good students who enjoy a close relationship with each of their parents. None has special medical, educational, or psychological needs. The children have deep roots in their community and want for nothing in Massachusetts, a finding that is not contested on appeal. Nor is there a question, as noted

supra, that the opportunities available to them in California would be roughly equivalent to those they currently enjoy.

iv. _Interests of the parents_. The judge found that the proposed move presented a real advantage to the mother.[10] The judge did not minimize the real advantage to the mother in any way, but considered the apparent disregard she demonstrated as to the impact the proposed move would have on the father and the children.[11] The judge's findings, amply supported by the record, reflect that the mother did not investigate the opportunities available to the children academically, musically, athletically, or culturally. The judge's findings illustrate that the mother is not a reliable evaluator of the interests of others, and in particular, of the children. On the other hand, the quantity and the quality of the father's parenting time with the children

---

[10] The mother complains that the judge made exhaustive findings about the father's interests and minimal findings about her. The number of findings of fact relating to each parent is of no significance; rather, the findings themselves control. Further, as we have already stated, the factors in considering the interests in a removal case "must be considered collectively," and no one factor in particular controls the outcome. Dickenson v. Cogswell, 66 Mass. App. Ct. at 448, quoting from Yannas, 395 Mass. at 712.

[11] It is commendable that the mother does not intend to move to California if her request to remove is denied, deferring that move until the twins graduate from high school. Moreover, the mother and her husband have been maintaining a bicoastal relationship for over eighteen months. The judge found that the mother sees her husband "on a near monthly basis." The mother will not be losing a job or housing if she remains in the Commonwealth until the children graduate high school.

cannot be replicated if they are permitted to move.  As such the judge's finding that a cross-country move would not be in the interests of the father is well grounded in the record.

v.  Visitation.  On appeal, the mother argues that the judge failed to consider reasonable alternative visitation in finding the proposed move was not in the best interests of the children.  "[T]he test is not whether there is no impact on the father's association, but whether reasonable 'alternative visitation arrangements' might achieve ongoing and meaningful contact appropriate to the circumstances."  Rosenthal v. Maney, 51 Mass. App. Ct. 257, 271 (2001).  Here, the judge found that the mother failed to make realistic suggestions as to how the father and the children might achieve the ongoing and meaningful contact they currently enjoy.  That finding is not in error.[12]

ii.  Balancing real advantage and best interests.  We acknowledge that prior cases affirm the allowance of a request to remove children from the Commonwealth where the trial judge

---

[12] The mother's visitation proposal at trial was de minimis. She was also disingenuous in her suggestion that the father could relocate to California because his employer is based there.  The judge found that the location of the father's employer in California is an eight hour drive from Danville, and that the father rarely traveled to California for business.  The judge did not abuse her discretion in rejecting this suggestion. After trial, the mother offered a more detailed plan, generally providing that the children could travel to Massachusetts during their vacation time and that the father could see the children whenever he is in California.  The posttrial submissions of counsel, including any proposed judgments, are not evidence and we do not consider them when reviewing the judge's findings.

has found a real advantage exists for the custodial parent. However, a finding that the proposed move presents a real advantage to the physical custodian does not necessarily mean that the move is in the best interests of the children.  Here, the real advantage to the mother does not align with the children's best interests or the interests of the father.  See Dickenson v. Cogswell, 66 Mass. App. Ct. at 447, 452, quoting from Yannas, 395 Mass. at 711 (effects of move on children are "most important" and deferring to judge's view that it was not in child's best interests to permit move to California where "bicoastal existence" would be tiring and stressful, financial security would diminish, and there would be negative impact on important relationship with father); Rosenthal v. Maney, 51 Mass. App. Ct. at 266 ("best interests of the children always remain the paramount concern").

The judge did not err in finding that the proposed move would have clear and significant negative effects on the children and the father which were not outweighed by the benefits that would inure to the mother.  That decision is supported by the record and the judge's copious findings of fact; we accordingly discern no error.

2.  Child support.  In support of his complaint for modification, the father alleged as a material and substantial change of circumstances the mother's remarriage.  At the time of

the modification trial, the judge found that the father's income had modestly increased,[13] and that the mother's income remained at zero.  The judge further found, however, that the mother now receives estimated contributions from her new husband in the amount of $1,000 per week.  Based on those changes, including adding the new husband's voluntary contributions to the mother's income into the child support calculation, the judge reduced the father's child support obligation from $830 per week to $808 per week.  The judge also eliminated the obligation of the father to pay to the mother twenty-five percent of his bonuses, reasoning that the new child support order included the father's bonus income.[14]  On appeal, the mother argues that the judge erred in attributing income to her of $1,000 per week.

"Public policy dictates that children be supported by the financial resources of their parents insofar as is possible." M.C. v. T.K., 463 Mass. 226, 231 (2012.  The Massachusetts Child

---

[13] The judge found that the father's income at the time of the divorce in 2011 was $3,154.46 per week, excluding bonuses. At the time of the removal trial in 2013, the father's income was $3,642.68 per week, including bonuses.

[14] General Laws c. 208, § 28, as amended through St. 2011, c. 93, § 37, provides that a child support order shall be modified "if there is an inconsistency between the amount of the existing order and the amount that would result from application of the child support guidelines."  Although the father alleged that there had been a material change of circumstances, the judge here was correct to apply those guidelines to the parties' updated financial circumstances.  See G. L. c. 119A, § 13(c); Morales v. Morales, 464 Mass. 507, 512 (2013); Croak v. Bergeron, 67 Mass. App. Ct. 750, 754 (2006).

Support Guidelines (2009) (guidelines) detail the types of income that can be considered in calculating child support. See guidelines § I-A. The father contends that the funds received by the mother from her husband are specifically contemplated by the guidelines, which provide that income may include "[s]pousal support from a person not a party to this order." Guidelines § I-A(18) Alternatively, the father argues that the income falls under the catch-all provision, covering "[a]ny other form of income or compensation not specifically itemized above." Guidelines § I-A(28). The mother contends that the guidelines prohibit from consideration contributions of a present spouse in calculating a child support obligation. Contrary to the position of each party, the guidelines do not reflect a direct prohibition on contributions from a present spouse, nor do they include a direct command to include them.[15] Rather, "[t]he guidelines and our case law leave the definition of income flexible, and the judge's discretion in its determination broad." Casey v. Casey, 79 Mass. App. Ct. 623, 634 (2011). Nevertheless, that discretion is not without bounds.

Here, the judge's findings do not include pertinent details about the funds received by the mother from her new husband,

---

[15] This stands in contrast to the Alimony Reform Act of 2011, St. 2011, c. 124, § 3, G. L. c. 208, § 54(a), which precludes from consideration the income and assets of the payor's spouse in a redetermination of alimony in a modification action.

such as how those funds are expended. Additional findings that would aid our analysis include, but are not limited to, the costs associated with the mother traveling to and from California, the lack of an obligation of the mother's husband to support the children, the manner in which the mother's and the children's lifestyles are altered by these funds, the discretion that the mother's husband maintains in payment of these funds, and the manner in which the mother would support her household absent these funds. Without such findings, the facts as they presently stand are insufficient to determine whether the new husband's contributions should be included in the child support calculations under the guidelines. Accordingly, that portion of the judgment is vacated and the matter is remanded so the judge may make additional findings with respect to this issue.

Because the matter must be remanded, we also address the judge's sua sponte elimination of the father's obligation to pay a portion of his bonus to the mother as child support. Doing so was error where neither party so requested and the order has the potential to reduce what the mother may otherwise be entitled to if the father's bonus exceeds the amount of the bonus factored into the guidelines. Similarly, the weekly child support order could be deemed excessive if the father earns a bonus in a lesser amount than that already applied to the guidelines. The

bonus component of the father's child support obligation shall thus be reinstated.

4. <u>Conclusion</u>.  The portion of the judgment dismissing the mother's complaint for modification is affirmed.  The portion of the judgment reducing and restructuring the father's child support obligation is vacated and the matter is remanded to allow the judge to make additional findings and rulings consistent with this opinion.  Additional evidence may be taken in the judge's discretion.  The bonus component of the father's child support obligation shall be reinstated.  The father's request for appellate counsel fees is denied.

<u>So ordered</u>.