Kaye Mulvey (the mother) appeals from an amended judgment, entered after an order of remand from this court[2] that denied her request to remove the child to Minnesota.[3] On appeal, the mother contends that the judge did not properly weigh all the factors identified in Yannas v. Frondistou-Yannas, 395 Mass. 704, 711 (1985), and abused her discretion when she found that it was not in the child's best interests to be removed to Minnesota. We affirm.
We review a judge's decision regarding the removal of a child for abuse of discretion or an error of law, accepting the judge's findings unless shown to be clearly erroneous. Id. at 709-710. A judge abuses her discretion where she "ma[kes] a clear error of judgment in weighing the factors relevant to the decision ... such that the decision falls outside the range of reasonable alternatives." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (quotation omitted).
Discussion. The mother contends that the judge abused her discretion by denying the mother's request to remove the child and by not properly weighing the five factors identified in Yannas, supra at 711. Under G. L. c. 208, § 30, as amended by St. 1986, c. 462, § 9, a minor child who is under the "suitable age to signify his consent" cannot be removed from Massachusetts "without the consent of both parents, unless the court upon cause shown otherwise orders."[4] " 'Upon cause shown' means that removal is in the best interests of the child." Miller v. Miller, 478 Mass. 642, 647 (2018), citing Yannas, supra at 711.
A. Real advantage. "In determining whether cause for removal by the parent with primary physical custody has been shown under the statute, the judge must consider the custodial parent's request under the familiar two-prong 'real advantage' test set forth in Yannas, 395 Mass. at 710-712...." Murray v. Super, 87 Mass. App. Ct. 146, 149 (2015). "[T]he first consideration is whether there is a good reason for the move, a 'real advantage.' " Ibid. quoting from Yannas, supra at 711. "At this stage the judge must consider 'the soundness of the reason for moving, and the presence or absence of a motive to deprive the noncustodial parent of reasonable visitation.' " Miller, supra at 650, quoting from Yannas, supra at 711.
Here, the judge found, the record supports, and the father does not contest, that the mother had a sincere reason to remove the child to Minnesota, and that the request was not made to deprive the father of access to the child. Moreover, the judge concluded that a move to Minnesota would provide a real advantage to the mother as she would have financial and emotional support from her family. See Pizzino v. Miller, 67 Mass. App. Ct. 865, 870 (2006). Specifically, the judge found that the mother could live with her family and that she would be closer to her brother and sister and their families.
B. Best interests of the child. Once the judge has determined that the reasons for the proposed move are sincere, and that removal offers a "real advantage" to the custodial parent, the judge must then look at a number of factors "collectively" to determine whether removal is in "the best interests of the child." Yannas, supra at 711-712. We remanded this matter for a fuller consideration of all of the relevant Yannas factors in Jordan I. The mother maintains that the judge again failed to consider all of the factors and gave disproportionate weight to one factor-the impact on the father-child relationship.
The Yannas factors are: "(1) whether the quality of the [child's life] will be improved, including any improvement that 'may flow from an improvement in the quality of the custodial parent's life'; (2) any possible 'adverse effect of the elimination or curtailment of the child's association with the noncustodial parent'; (3) 'the extent to which moving or not moving will affect the [child's] emotional, physical, or developmental needs'; (4) the interests of both parents; and (5) the possibility of an alternative visitation schedule for the noncustodial parent." Murray v. Super, supra at 150, quoting from Dickenson v. Cogswell, 66 Mass. App. Ct. 442, 447 (2006). None of the relevant factors are controlling on their own. Dickenson, supra.
Here, after remand, the judge made additional findings of fact that explicitly addressed all of the Yannas factors. First, it is true, as the mother argues, that "the best interests of a child are ... interwoven with the well-being of the custodial parent." Yannas, supra at 710. Although the judge found that the mother would have a "real advantage" from moving back to Minnesota, "a finding that the proposed move presents a real advantage to the physical custodian does not necessarily mean that the move is in the best interests of the child[ ]." Murray, supra at 153. The judge explicitly found that the mother's move to Minnesota would not result in her greater happiness; therefore greater happiness would not flow to the child.
To her great credit, the mother had maintained sobriety for three years. However, the judge found that the mother left Minnesota to move to Massachusetts because of "triggers," i.e., her network of friends and others in Minnesota that contributed to her struggles with alcohol. The judge also credited the father's testimony that the mother had a difficult relationship with her mother. The judge recognized that the mother has moved away from Minnesota twice before, and was not convinced that a return to Minnesota on this occasion would improve her well-being, and therefore that of the child.[5]
Furthermore, the judge found that the mother did not present evidence other than a plan to return to school in Minnesota, and did not establish the existence of greater employment opportunities in Minnesota than the opportunities she has had in Massachusetts.[6] See Cogswell, supra at 449.
The judge was able to listen to the mother's testimony and observe her demeanor while in court and concluded that "a move back to Minnesota [would not] result in the happiness which [the Mother sought]." See Custody of Eleanor, 414 Mass. 795, 800 (1993) ("It is within the judge's discretion to evaluate the credibility of witnesses and to make [her] findings of fact accordingly"). Therefore, it was not an abuse of discretion for the judge to find that the mother had a sincere reason to remove the child to Minnesota, yet conclude that the move would not result in the mother's happiness and thereby redound to the benefit of the child. See Cogswell, supra at 448-450 (where mother had sincere reason for wanting to move to California, but move was not in best interests of child); Murray, supra at 153.
The judge also considered the additional Yannas factors in reaching her conclusion. After hearing the testimony of the father's and mother's experts, the judge found that the move would seriously and negatively affect the child's relationship with his father and that curtailment of that relationship would have an adverse effect on the child's development. See Cogswell, supra at 450. The father has had significant parenting time with the child since his birth, and they have developed a strong attachment and bond. Due to the age of the child, the mother's expert testified that the father and child would need three to four days of in-person contact per month to maintain their relationship. The father's expert testified that the father and the child had a "secure attachment, which is so crucial for [the child's] current and future development," and that a curtailment of their bond could put the child at risk for depression, anxiety, and confusion. In addition, the father's expert testified that the use of "Skype" or "Facetime" would not suffice as a substitute for physical contact. In light of that testimony, the judge found that the mother's proposed visitation schedule was not realistic to maintain the bond between the father and the child.[6] ,[7]
In Jordan I, we remanded the matter for a more detailed explanation of the judge's application of the Yannas factors, including her findings based on the expert's testimony regarding the "possibility" that the child's moving could have "dire consequences." On remand, she made further findings on multiple factors, and in assessing the interests of the child, made explicit findings regarding the harm that she found the child "would" suffer, as distinguished from the child being put "at risk" of harm. Contrary to the mother's assertion, the judge in her remand decision did not place "disproportionate emphasis" on the effect of the proposed separation from the father in reaching her conclusion.[9] Although this factor is not controlling, it is nevertheless relevant in the total consideration. See Woodside v. Woodside, 79 Mass. App. Ct. 713, 720 (2011).
The weight of the evidence is for the trial judge. See Custody of Eleanor, supra at 800. Balancing the factors that bear on the child's best interests in a removal case "involve[s] classic discretionary decision-making by the trial judge." Cogswell, supra at 452. The mother's contentions devolve essentially to an argument that the judge should have weighed the factors differently. After remand, the judge gave further consideration to all the Yannas factors and determined that removal to Minnesota was not in the child's best interest. That decision is supported by the record and the findings of fact. The judge did not abuse her discretion. See Wakefield v. Hegarty, 67 Mass. App. Ct. 772, 774 (2006).
A final word is in order. Legal proceedings are a blunt instrument with which to calibrate the intricacies of human relationships. Nothing in this memorandum and order should be considered a criticism of the parents or their families or a referendum on the parenting skills of one or the other parent. The record reflects that the child has two loving parents and a welcoming extended family. The trial judge decided that a move to Minnesota would not provide enough of a benefit to the mother to improve the child's welfare, and that the child's best interests were best served by remaining in close proximity to both parents in Massachusetts. While one parent in any removal proceeding will always be disappointed in the decision of the court, both parents here have demonstrated a deep love of, and commitment to, this child. Our decision affirming the trial judge's order affirms the judge's recognition of the positive benefits of that commitment.
Amended judgment affirmed.

See Jordan v. Mulvey, 91 Mass. App. Ct. 1102 (2017) (Jordan I ).

The child was fourteen months old at the time of the trial.

"The statute is intended to 'preserve the rights of the noncustodial parent and the child to maintain and develop their familial relationships, while balancing those rights with the right of the custodial parent to seek a better life for himself or herself.' " Miller v. Miller, 478 Mass. 642, 647 (2018), quoting from Wakefield v. Hegarty, 67 Mass. App. Ct. 772, 775 (2006).

The mother denied that she had told the father that her friends or family were a trigger. The judge was permitted to credit the father's testimony. See Custody of Eleanor, 414 Mass. 795, 800 (1993), quoting from Spiegel v. Beacon Participations, Inc., 297 Mass. 398, 407 (1937) ("[T]he judge who has heard the testimony and seen the witnesses face to face has a better opportunity for determining the credibility of their conflicting statements than can possibly arise from reading a record"). On appeal the mother contends that this testimony is too thin to support the judge's finding, but the mother did not provide any other explanation at trial for her previous alcohol use, and did not address what factors were triggers. The judge's findings were not clearly erroneous.

The mother has held various jobs while living in Massachusetts-waitress, nanny, receptionist, daycare provider, and recruiter at a law firm.

The mother testified that she "would be very happy to fly back here four times a year or whatever the [c]ourt found right" and that she would "try to make it as easy as possible on [the father] when he came to Minnesota."

The judge stated, "This decision is not about the father and the fact that his visitation with his [child] will be disrupted; it is about this particular young child and the effects that the proposed move would have on him."