NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1116

CHAD L. OAKES

vs.

SHELLY L. BILDEN-OAKES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a two-day trial, a judgment of divorce nisi (divorce judgment) entered.  This appeal stems from the denial of Shelly Bilden-Oakes's (wife) request for alimony.  She argues that the judge incorrectly found that Chad Oakes (husband) was unable to pay alimony and incorrectly found that, even if the husband could pay alimony, there was insufficient evidence of the parties' marital lifestyle to determine what amount of alimony would enable her to maintain a lifestyle comparable to that the parties enjoyed during the marriage.  We agree.  We vacate so much of the divorce judgment as pertains to alimony and remand for further proceedings consistent with this memorandum and order.

Background.  The parties were married in 2001 and separated in Fall 2017.  In 2018, the husband filed a complaint for divorce and both parties filed financial statements prior to trial.  Relevant to this appeal, the husband reported on his financial statement a gross weekly income of $3,206.29, total gross weekly deductions from his paycheck of $1,438.76, and weekly expenses of $1,538.  To calculate his net weekly income, the husband subtracted his total gross weekly paycheck deductions from his gross weekly income, arriving at a net weekly income of $1,767.53 (before deducting his reported weekly expenses of $1,538).  The parties also filed a statement of uncontested facts which described the timeline of their marriage, their employment qualifications and history, and a detailed summation of many of their assets including the value of their marital home when it was sold and their various bank accounts.

At trial, the only witnesses were the husband and the wife. Both the husband and wife provided a significant amount of evidence regarding their lifestyle after their separation.  As to the parties' marital lifestyle prior to their separation, there was evidence that the parties lived in a four-bedroom, single-family home in Braintree which they purchased in 2008 for $375,000, they had their house professionally cleaned every

2

couple of weeks, the wife and husband were able to regularly contribute to their retirement accounts, and they had $5,000 per month of disposable income between them. The husband testified that his credit cards were paid in full each month, but that a source of contention in the marriage was the wife's spending habits. According to the testimony of the husband, the wife spent a considerable amount of money purchasing items using their credit cards and would spend money on shoes and clothes. The wife testified that she often had to buy clothes because of a medical condition that causes her weight to fluctuate.

In her detailed findings, the judge credited the husband's reported gross weekly income of $3,206.29. The judge credited "most" of the husband's weekly expenses, determining his weekly expenses to be $1,464.08 (after recalculating the amount of his weekly rent and discrediting his claim regarding weekly "motor vehicle expenses"). The judge also credited various paycheck deductions reported by the husband totaling $610.45. The judge added those paycheck deductions to the weekly expenses that she found credible, concluding that the husband's combined weekly expenses and paycheck deductions totaled $2,074.53. The judge then deducted that $2,074.53 figure from the husband's reported net weekly income of $1,767.53, ultimately concluding that the husband's total weekly expenses exceeded his net weekly income

3

by more than $300. This finding was, however, based on a miscalculation by the judge: she double counted a portion of the husband's paycheck deductions, by adding $610.45 in paycheck deductions to his weekly expenses and then subtracting that total from his net weekly income, despite that his net weekly income already reflected those paycheck deductions. Had the judge not double counted those paycheck deductions, her findings would have shown that the husband's net weekly income ($1,767.53, which reflected all reported paycheck deductions) actually exceeded his credible weekly expenses ($1,464.08) by more than $300.

The judge ultimately declined to enter an alimony order. She found that while the wife was in need of alimony, the husband was unable to pay alimony because his weekly expenses, which the judge did not find excessive, exceeded his net income. As previously noted, this finding was error. The judge did not end the inquiry there, however, but added that even if the husband could pay alimony, "[t]here was insufficient evidence at trial for the Court to make finding[s] as to the parties' marital lifestyle" such that the judge could not "determine what amount of alimony would enable Wife to maintain a lifestyle comparable to that the parties enjoyed during the marriage."

4

Discussion.  The wife makes three arguments as to why the judge's determination that she was not entitled to alimony was error.  Before addressing her arguments, we note that "[a] judge has broad discretion when awarding alimony under the statute," and an appellate court will not disturb an alimony judgment unless it is plainly wrong.  See Zaleski v. Zaleski, 469 Mass. 230, 235-236 (2014).  An abuse of discretion occurs "where we conclude the judge made a clear error of judgment in weighing the factors relevant to the decision such that the decision falls outside the range of reasonable alternatives"  (quotation and citations omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

First, the wife argues that in determining that the husband could not afford to pay alimony, the judge subtracted his weekly deductions from his net weekly income, which already accounted for his weekly deductions.  We review this factual determination for clear error, see Murray v. Super, 87 Mass. App. Ct. 146, 148 (2015), and note that the husband concedes that the judge's calculation was based on double counting his weekly deductions.  After reviewing the financial evidence, we agree that the judge's determination that the husband could not afford alimony payments was erroneous as the deductions were in fact double

5

counted and remand so that the judge can make new factual findings regarding the husband's ability to pay alimony.[1]

The wife's second argument is that there was enough evidence for the judge to make a factual finding regarding the parties' standard of living prior to their separation. "'Alimony' is defined . . . as 'the payment of support from a spouse, who has the ability to pay, to a spouse in need of support for a reasonable length of time, under a court order.'" Young v. Young, 478 Mass. 1, 5 (2017), quoting G. L. c. 208, § 48. "A judge must consider and weigh all the relevant factors [under G. L. c. 208, § 53 (a)], but where the supporting spouse has the ability to pay, 'the recipient spouse's need for support is generally the amount needed to allow that spouse to maintain the lifestyle he or she enjoyed prior to termination of the marriage.'" Young, supra at 6, quoting Pierce v. Pierce, 455 Mass. 286, 296 (2009). The husband is correct that need is measured, in part, by evidence of the parties' lifestyle prior to their separation. See Zaleski, 469 Mass. at 243 ("Because 'need' is a relative term for purposes of the act, it must be

_____

[1] The wife also argues that the judge did not include all of the husband's income when calculating the husband's total gross income. We need not rule on this because we have already ruled the judge's math regarding the husband's ability to pay is fundamentally flawed and remand so that it can be recalculated based on the reasoning above.

6

measured in light of mandatory considerations that include the parties' marital lifestyle").

Based on the financial summaries submitted by the parties, statement of uncontested facts, and the trial testimony of both the husband and the wife about their lifestyle prior to separation, we determine that there was enough evidence for the judge to make the necessary considerations under G. L. c. 208, § 53 (a). While the evidence of the monetary value of the wife's marital lifestyle was certainly not overwhelming, there was evidence of the wife's spending habits and the lifestyle the couple enjoyed. See M.C. v. T.K., 463 Mass. 226, 234 n.11 (2012) ("standard of living . . . may be closely linked to household spending"). For example, testimony established that their home was worth $375,000 when they purchased it in 2008. The judge also acknowledged that "there were several months in which wife spent all $5,000.00 of the parties' monthly disposable income." The judge also was provided with evidence that, while married, the parties were each able to regularly contribute to their retirement accounts. Lastly, the judge heard testimony from the husband that he routinely paid the full amount on his credit card debt every payday. Although a difficult task, we often ask fact finders to assign monetary value to extremely abstract concepts. See Aleo v. SLB Toys USA,

7

Inc., 466 Mass. 398, 412 (2013), quoting Clifton v. Massachusetts Bay Transp. Auth., 445 Mass. 611, 624 (2005) ("a 'proper punitive damage award"' is one that is 'sufficient . . . to send a clear message to the [defendant] of condemnation for its reprehensible behavior").  Where some evidence was presented of the parties' marital lifestyle, this case is no different.  Where the judge has already determined that the wife had a need for alimony, we remand for the judge to redetermine the husband's ability to pay (after correcting the double counting error), consider all relevant factors under G. L. c. 208, § 53 (a), and make an appropriate award for alimony.

Lastly, the wife argues that the judge arbitrarily found the wife to be underemployed.  It is unclear how this factored into the judge's decision-making when the judge had already found the husband unable to pay alimony.  In this instance, where we are remanding so that alimony can be redetermined, the wife's employment status will be revisited by the judge.

Conclusion.  So much of the divorce judgment as it relates to alimony is vacated, and the case is remanded for further proceedings consistent with this memorandum and order.

So ordered.

By the Court (Meade, Walsh & D'Angelo, JJ.[2]),

Clerk

Entered:  September 16, 2024.

---

[2] The panelists are listed in order of seniority.