NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1443

NATALIE SHKOLNIKOV[1]

vs.

DANIEL JEFFREY COHEN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff (mother) appeals from a Probate and Family Court judgment on the mother's complaint for modification entered after trial, denying her request to permanently remove the parties' minor child to the State of Alaska.  The mother contends that the judge abused her discretion in applying the removal analysis under the Yannas-Mason framework by not equally weighing each relevant factor in determining whether removal was in the best interests of the child.  See Yannas v. Frondistou-Yannas, 395 Mass. 704, 711-712 (1985).  See also Mason v.

---

[1] As is our custom, we use the names appearing on the complaint to establish support, notwithstanding that the mother subsequently changed her surname.  We note that the Department of Revenue filed that complaint on behalf of the mother but is not a party to this appeal.

Coleman, 447 Mass. 177, 184-186 (2006).  Further, the mother argues that the Yannas-Mason binary framework should be replaced by a "pure best interest of the child standard."  We affirm.

Background.[2]  The parties were never married.  They were in a relationship for less than three years before separating.  The parties were not in a relationship at the time of the child's birth.

In March 2016, pursuant to a stipulation of the parties, a Probate and Family Court judge entered a judgment which provided in relevant part that the parties would have joint legal custody of their child and the mother would have primary physical custody, subject to the parenting time of the defendant (father).  On May 11, 2021, a judgment of modification entered, setting the parenting schedule in effect at the time of trial; it provided, in pertinent part, the father parenting time every Wednesday from 6:00 P.M. to 7:30 P.M. and alternating weekends from Friday at 6:30 P.M. to Sunday at 6:00 P.M.  In addition, the schedule established that the parties would alternate parenting time on holidays and school vacations, and provided for each party to have two nonconsecutive weeks of parenting

_____

[2] We draw the facts from the judge's comprehensive relevant procedural history, findings of fact, rationale and further findings, and conclusions of law.  We note that the judge incorporated the parties' stipulation of uncontested facts into her findings.

2

time during the child's summer vacation.  The parenting schedule permitted both parties to attend the child's extracurricular activities regardless of the parenting schedule.  The judgment also required the father to pay the mother $215 per week in child support, and that the parties alternate the years each can claim the child on Federal and State tax returns.

In March 2022, the mother married a member of the United States Army, who was stationed in the city of Malden. Subsequently, the mother's husband was reassigned and ordered to report to Fairbanks, Alaska, in early 2023.  As a result, the mother filed a complaint for modification in October 2022, asking the judge to allow her to remove the child to Alaska, establish a new parenting schedule, and allow the mother to claim the child for tax purposes each year.[3]  Under the mother's proposed parenting plan, the father would receive parenting time (a) in Alaska one weekend per month, (b) for two three-week periods in Massachusetts in the summer, (c) every Father's Day and on alternating Thanksgivings, and (d) for equal portions of each school winter break and the entire week of each school spring break.

---

[3] The father first learned of the mother's intention to remove the child to Alaska on being served with the complaint for modification.

In January 2023, the judge appointed a guardian ad litem (GAL) to make recommendations on the best interests of the child in relation to the parenting plan and removal.[4]  In February 2023, the father filed his answer and counterclaim to the mother's October 2022 complaint for modification, asking the judge to grant the father primary physical custody of the parties' child, terminate the father's existing child support obligation, and order the mother to pay child support to him. The mother filed an amended complaint for modification in March 2023, that is the subject of this appeal, restating her request to remove the parties' child to Alaska and asserting that the child has refused parenting time with the father and feels unsafe in her father's care.  The father then filed an answer and counterclaim to the mother's amended complaint for modification in April 2023, which articulated the same requests included in his February 2023 filing.[5]  In September 2023, the judge entered an order permitting Dr. Brian Rachmaciej, a licensed school psychologist and mental health counselor, to

---

[4] The GAL filed her report in June 2023.

[5] The father counterclaimed for primary physical custody of the child but did not present a case at trial for a change in primary physical custody.  The father's proposed judgment submitted after trial did not seek such relief.  Accordingly, the judge dismissed the father's counterclaim.

4

observe the child during the father's parenting time.  Dr. Rachmaciej testified as an expert at trial.

After a two-day trial in April 2024, the judge denied the mother's request to permanently remove the parties' minor child to Alaska.[6]  The judge found that the mother demonstrated a real advantage to removal because she would be able to live with her husband as a family unit and benefit from the emotional and financial security that such a living situation would provide.  However, the judge also found that despite the real advantage to the mother and some of the benefits that would flow from the mother to the child, removal would not be in the child's best interests because it would be very detrimental to the relationship between the child and the father and would separate the child from her relatives, friends, and extracurricular activities in Massachusetts.

Discussion.  "General Laws c. 208, § 30, governs removal from the Commonwealth of children of divorced parents where one parent seeks to relocate without the consent of the other parent."  Miller v. Miller, 478 Mass. 642, 646-647 (2018).  While G. L. c. 208, § 30, is not directly applicable to nonmarital children, "the legal equality of nonmarital children

---

[6] The judge also revised the parenting schedule to provide the father parenting time in the summer on alternating weekends from Wednesday at 6:00 P.M. to Sunday at 6:00 P.M.

5

pursuant to G. L. c. 209C, § 1, dictates the same rule apply for children in comparable circumstances." Smith v. McDonald, 458 Mass. 540, 546 (2010). Thus, "when a nonmarital child has two legal parents, the parent with custody may not move the child outside the Commonwealth without the permission of the other parent or of a court" (footnote omitted). Id., citing Wakefield v. Hegarty, 67 Mass. App. Ct. 772, 775 (2006).

Where the parent seeking removal has primary physical custody of the child, the judge must determine "whether there is a real advantage to the custodial parent and consider[] . . . the best interests of the child[] and the interests of both parents." Murray v. Super, 87 Mass. App. Ct. 146, 146-147 (2015), citing Yannas, 395 Mass. at 710-711. "To satisfy the real advantage test, the custodial parent must demonstrate 'a good, sincere reason for wanting to remove to another jurisdiction' and 'the soundness of the reason for moving, and the . . . absence of a motive to deprive the noncustodial parent of reasonable visitation.'" Altomare v. Altomare, 77 Mass. App. Ct. 601, 604 (2010), quoting Yannas, supra at 711. If the real advantage test is satisfied, then the judge must consider whether removal is in the best interests of the child. See Murray, supra at 149. "Where the real advantage to the

6

custodial parent is at odds with the best interests of the child[], the child[]'s interests are paramount." Id. at 147.

We review an order on a request to remove a child from the Commonwealth for "'abuse of discretion or other error of law,' accepting the judge's findings unless shown to be clearly erroneous." E.K. v. S.C., 97 Mass. App. Ct. 403, 411 (2020), quoting Murray, 87 Mass. App. Ct. at 148.

1. Removal of child to Alaska. The mother contends that the trial judge abused her discretion in determining that removal is not in the child's best interests. We discern no abuse of discretion in the judge's conclusion.

The judge first determined that the mother established a "real advantage" to removal and, further, that the mother's "desire to live with her spouse is sincere." The judge also found that, in Alaska, the mother would be able to live as a family unit with her husband and children and enjoy the emotional and financial support that accompany such a living arrangement.[7] In addition, the mother would also benefit from the reduced financial strain of no longer maintaining two households.

---

[7] The mother and her husband also share one child, who was born in 2023.

7

Having found a real advantage to the mother, the judge then considered whether removal was in the best interests of the child. "[A] finding that the proposed move presents a real advantage to the physical custodian does not necessarily mean that the move is in the best interests of the child[]." Murray, 87 Mass. App. Ct. at 153. The relevant factors in determining the best interests of the child are

> "(1) whether the quality of the [child's life] will be improved, including any improvement that 'may flow from an improvement in the quality of the custodial parent's life'; (2) any possible 'adverse effect of the elimination or curtailment of the child[]'s association with the noncustodial parent'; (3) 'the extent to which moving or not moving will affect the [child's] emotional, physical, or developmental needs'; (4) the interests of both parents; and (5) the possibility of an alternative visitation schedule for the noncustodial parent."

Id. at 150, quoting Dickenson v. Cogswell, 66 Mass. App. Ct. 442, 447 (2006). These factors must be considered collectively, and none are controlling in deciding the best interests of the child. See Yannas, 395 Mass. at 711-712.

The mother contends that the judge erred by not considering the benefit of the move to the child, placing greater weight on the effect of the removal on the father, and disregarding the hardships that the mother would experience by remaining in Massachusetts. We disagree. The judge acknowledged that the move to Alaska would benefit the mother emotionally and socially and reduce her financial burden, which in turn would positively

8

affect the child.  The judge considered the home environment in which the child would be living in Alaska, including the larger home size and various community amenities and activities available.  The judge also noted that the mother has been the child's primary physical custodian since 2016 and is responsible for most of the child's routine care, including her medical appointments and her transportation to and from school.

On the other hand, the judge considered that removal would "be extremely detrimental" to the child because it could "effectively eliminate[]" the relationship between the child and the father.  The judge found credible the testimony of both the GAL and Dr. Rachmaciej that the father and the child "are closely bonded and enjoy their time together," despite the mother's assertions to the contrary.  If moved to Alaska, the child would lose her weekly in-person time with her father.  The elimination of that regular contact would allow the mother to "further warp" the child's view of the father, resulting in a "severing of the positive relationship" between the child and the father.  The judge credited the testimony of Dr. Rachmaciej that removal to Alaska would negatively impact the relationship between the child and the father.

The judge also found the parenting schedule proposed by the mother to be "totally impractical."  The mother's argument that

the proposed plan increases opportunities for the father to spend time with the child is undermined by the mother's history of denying the father his parenting time and the logistical and financial hardship that traveling between his home in Massachusetts and the child's proposed home in Alaska would cause the father.[8]  The judge emphasized the impracticality of the mother's proposed parenting plan by noting that the evidence established that there are no direct flights between Boston and Fairbanks; travel between the mother's husband's home in Alaska and the mother's home in Worcester takes nearly twenty-four hours door to door; and round-trip plane tickets between Boston and Fairbanks cost $600 to $800 per person.

---

[8] On three separate occasions, Probate and Family Court judges found the mother in contempt for failing to provide the father his parenting time under the parenting schedule.  In October 2015, within three weeks after the parties' first temporary parenting schedule was established by the court, the father filed a complaint for contempt against the mother, asserting that the mother had denied him his parenting time.  In December 2015, a judge found the mother in contempt, having shown a "blatant disregard" for the parties' parenting schedule. The father also filed a complaint for contempt in October 2016, though it was dismissed.  However, the judgment of dismissal stated that the mother's behavior "was intended to frustrate the spirit and intent of the parties' agreement" and the mother was ordered to pay the father's fees related to the complaint.  In January 2023, a judge found the mother in contempt for denying the father his parenting time and ordered her to pay the father $2,000 in attorney's fees.  In March 2023, a judge again found the mother in contempt for denying the father parenting time.

In addition, the judge found that the child would be disadvantaged by the loss of regular contact with her family and friends as well as separation from her current activities in Massachusetts, which "would be challenging for a child her age." The mother's parents reside in Worcester and most of the child's maternal relatives also live in Massachusetts. The child visits with her maternal relatives about once a month. Neither the mother nor her husband has family in Alaska. If removal were permitted, the judge found that the mother would visit her relatives in Massachusetts no more than once per year.

In deciding the best interests of the child, the trial judge had no obligation to believe any particular witness, and it was up to the judge to decide on the credibility of witnesses and the weight to be given to their testimony. See Care & Protection of Three Minors, 392 Mass. 704, 711 (1984); Bak v. Bak, 24 Mass. App. Ct. 608, 616 (1987). We thus give deference to the trial judge on issues of witness credibility. See Custody of Eleanor, 414 Mass. 795, 799 (1993). Specifically, we defer to the judge's finding that the mother was not credible when she testified, first, that she would closely cooperate with the father to keep him up to date and involved in the child's education; second, that the mother would split the cost of travel involved in the new parenting schedule; and third, that

11

the mother altered her parenting behavior after reviewing the GAL report.  We also note that the judge found that the GAL credibly testified to her belief that the mother was not an accurate reporter of events between the parties, and that the mother "is intentionally manipulating [the child's] view of Father."  Specifically, the judge found that if removal were granted, the mother would be able to negatively influence the child's view of the father without challenge.

The mother is mistaken in claiming that the facts here are analogous to those in Miller and Wakefield, where removal was determined to be in the child's best interests.  In both cases, the parent seeking removal had close, supportive family in the place where they sought to move.  See Miller, 478 Mass. at 646; Wakefield, 67 Mass. App. Ct. at 774.  Here, the only family the mother has in Alaska is her husband, and the child would forgo not only the at least weekly visitation with her father, but also the monthly in-person contact she has with her relatives in Massachusetts.  Moreover, the dynamics between the parties in Miller and Wakefield are notably different than those between the mother and the father here.  In Wakefield, supra at 777, the judge found that the parent seeking removal made a considerable effort to foster a substantial relationship between the child and the other parent, and in Miller, supra at 645, the parent

12

who opposed removal often traveled for work and missed parenting time that he did not seek to make up.  Here, the record and the judge's findings of fact portray a far different relationship between the parents.  Indeed, the mother has consistently undermined the father's efforts to build a relationship with his daughter.

Thus, we conclude that the judge did not err in finding that the benefit to the mother would not outweigh the negative impact of removal on the child and the father.  Accordingly, we reject the mother's claim that the judge abused her discretion in concluding that removal is not in the child's best interests.

2.  Yannas-Mason framework.  The mother argues that we should replace the Yannas-Mason framework with a single, uniform, best interests of the child standard, a change that the Supreme Judicial Court declined to make in Miller, 478 Mass. at 659 (Gants, C.J., concurring).  We decline the mother's request because we have "no power to alter, overrule or decline to follow the holding of cases the Supreme Judicial Court has

decided."  Commonwealth v. Dube, 59 Mass. App. Ct. 476, 485 (2003).[9]

Judgment dated September 6, 2024, affirmed.

By the Court (Grant, Brennan & Smyth, JJ.[10]),

*Paul Little*

Clerk

Entered:  November 10, 2025.

---

[9] The father's request for appellate counsel fees is denied.

[10] The panelists are listed in order of seniority.

14